The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning. We have four cases for argument this morning, all involving the same parties, or largely the same parties. As counsel just said, the first case is Caterpillar Prodotti Stradali v. ITC and the case involves also a cross appeal. We have decided to allow argument consecutively with respect to the appeal and the cross appeal. I understand that arguments are going to be divided from the appellee and you'll have to keep track of your own time limits so you don't step on each other's. Mr. Barney, are you ready to proceed? I am, Your Honor. Okay, you may. Good morning, Your Honors. May it please the Court. I'd like to begin with the construction of Controller Configure 2 in Claims 2, 5, and 16 of the 530 patent. Worken and the Commission contend that because Controller was found to be the name for a class of structure, that's the end of the 112.6 inquiry, but it's not. This Court has made clear that in determining whether 112.6 applies, you must consider not just the introductory phrase, like Controller, but also the claimed function. The question is not whether the claim recites some structure, it's whether it recites sufficient structure to support the claimed function. Here, the claims require not just a controller, but a controller configured to perform specific tasks, like raising the lifting column synchronously. There's no dispute that those functions require specialized programming. The Commission simply did not consider those functions in its analysis. What about the fact that you have separately argued in your obviousness case that Alcosta would know what a controller is? It's a well-known, sort of off-the-shelf product, and it would not be anything complicated. Your Honor, we're accepting for the sake of argument that Controller was a name for a class of structures. We'll accept for the sake of argument Worken's position that it's a device that includes a processor that can be programmed to carry out specific functions. But that doesn't answer the question of whether it's sufficient structure to perform the claimed functions, because this Court has repeatedly held that for a computer-implemented invention like this one, the structure that performs a specially programmed function is an algorithm, not a generic processor. Now, Worken and the Commission argue that this rule only applies to the second step of the 112.6 analysis, not the first. And they ask the Court to adopt a double standard by which a black-box controller that even if they admit would not support a specially programmed function if recited in the specification can somehow be sufficient structure to support that same function if recited in the claim. Well, that makes no sense logically, and in fact, it contradicts the language of the statute. Section 112.6... What do we do with the fact that the ALJ made a specific factual finding with respect to what would be understood with respect to the controller? I mean, the ALJ, based on expert testimony, said that the opposer would know that it's just simple, again, off-the-shelf software, even, for purposes of performing the function. Well, Your Honor, if you look at the ALJ's analysis, and I would refer you to Appendix Page 430-31, the... Let me make sure I'm in the right volume here. The Court... Let me see. I would refer you to Appendix Page 430-31. Yeah. On page 430 is the sum total of the Commission's rationale on construing the claim. And all the Commission did was find that controller is the name for a class of structure. There's no analysis whatsoever that that class of structure was sufficient to perform the claimed functions. The Court, the ALJ, didn't even recite the claimed functions in its analysis. And that's the error. That's the error, because MTD products and other cases from this Court have said that you must consider the claimed function. It's not enough just to say, this is structure. If you look at the ITC's brief, for instance, they admit, on page 28 of their brief, that once the ALJ figured out that controller is the name for a class of structure, and I'm quoting them from their brief, they say, beyond that finding, which they call the essential inquiry, further application of the means-post function jurisprudence was not warranted and did not take place. So they admit that they didn't go further and look to see whether that structure was sufficient to accomplish the claimed functions. That's the error, Your Honor. Now, referring back to the statute and this proposed double standard, 112.6 speaks in terms of whether a claimed function has structure, quote, in support thereof. If it lacks the structure in support thereof, 112.6 applies and the claim covers the corresponding structure. But either way, the structure is the same. It has to be structure in support thereof, in support of the claimed function. There's no way to read that statutory language as imposing a double standard where the amount of structure necessary to support the claimed function would depend on the superficial happenstance of where in the specification it's recited. And as we pointed out... What's going to happen? Well, Your Honor, I would point to the Apple Motorola case as an example where there was a claim heuristic. And the court determined that that was not a means-plus-function limitation. But as part of that analysis, it looked at the claim and said there's things in the claim that explain how that heuristic actually works. So that's akin to an algorithm. But here there's nothing in the claim language that explains how this black box controller, which is essentially just a processor, actually accomplishes the function like raising the legs synchronously. That's what's missing in these claims. And that's what invokes 112.6. And it's also important to note, as we point out in our brief, that these limitations are the sole purported point of novelty of these claims. Workin doesn't contest that the RX-500 anticipates Claim 1, from which all three of these claims depend. And the Supreme Court long ago identified the device that is inherent when an inventor is painstaking when he recites what has already been seen and then uses conveniently functional language at the exact point of novelty. That's what Workin has done here. It seeks to claim all methods and all algorithms and all controllers for regulating lifting columns using leg sensor data while conveniently disclosing no methods, no algorithms, and no controller. That is pure functional claiming. And this is precisely what 112.6 was designed to address. But Workin only wants the benefit of 112.6. It wants the ability to claim functionally at the exact point of novelty, but it doesn't want to pay the price, the quid pro quo, of actually disclosing an algorithm to perform these claimed functions. And so we would ask the court to construe these claims as 112.6 limitation, and that would necessitate a finding of indefiniteness because Workin does not dispute that these claims are indefinite if they're covered by 112.6. Mr. Barney, this is Judge Toronto, and it's also right that you don't make a separate 112.2 indefiniteness argument apart from your argument that this claim falls within 112.6. Well, I think that's correct, Your Honor, although I would point out, and we did explain in our brief the interaction of the Halliburton line of cases with 112.6. I don't know whether I would call that a separate one, a stand-alone 112.2 argument, but our point there is that there is a body of case law from the Supreme Court that says if you try to claim functionally at the point of novelty... Right, but I think you understand the point. Of course, when something that belongs in 112.6 doesn't meet 112.6 requirements, it therefore fails 112.2. My question is whether you have made a 112.2 indefiniteness argument separate and apart from your argument that this belongs in 6 and flunk 6. I think that's a fair statement, Your Honor. We did not make a stand-alone 112.2 argument. I heard a tone. I'm not sure if that was my tone, but to the extent I have some time left, I'd like to just quickly address obviousness of those same three claims, 2, 5, and 16. The Commission found that in terms of obviousness, all three of those claims rise and fall with Claim 2, and Workin does not dispute this. We believe the Commission's finding that Claim 2 is not obvious is irreconcilable with its refusal to apply 112.6. For the controller configured to limitations. To avoid a finding of indefiniteness, Workin argued, and the Commission accepted, that a person of ordinary skill in the art would already know how to select a controller and program it to perform the claimed functions, specifically using leg sensor data. Caterpillar never argued that you would take Davis's entire grade and slope control system and drop it into the RX-500, which already had a grade and slope control system. That was a straw man created by Workin. Caterpillar's argument was simple and straightforward. Davis teaches a basic well-known type of controller called a deviation elimination controller, and as a Workin expert conceded that this concept is well-known, and that even a graduate student would be able to implement it in the RX-500. And so we believe the Commission erred as a matter of law in accepting Workin's bodily incorporation argument, where the entire grade and slope controller in Davis had to be reprogrammed and incorporated wholesale into the RX-500. We never argued that, and the law doesn't require it. And one last point, the Commission also erred as a matter of law in focusing on whether the modification would disrupt Davis's principle of operation. And the ITC concedes at page 30 of its brief that that was the main premise of the ALJ's finding, but we believe it's legally incorrect because in our combination, Davis is a teaching reference. It's only being used to supply a simple and well-known teaching, and to be clear, Davis itself is not being modified in our proposed combination. Only the RX-500 is being modified, and therefore the inquiry should be whether that modification disrupts the RX-500's principle of operation, and Workin does not dispute that. That's an undisputed point. It does not disrupt the RX-500's principle of operation. I know that I'm into my rebuttal time, so unless your honors have questions, I will. Okay, counsel, thank you. Thank you. Let's hear from the other side. Good morning. May it please the Court. So I would address the issues raised by Caterpillar. First, with respect to the claim construction, the record doesn't support Caterpillar's argument. In this case, both intrinsic and extrinsic evidence show that control is not claimed as a means plus function term. So the claim limitation in question doesn't use the word means. And furthermore, the term control is not a non-swerve. What did the intrinsic record tell us that it's not a means plus function? Well, I'm referring to claim language. Okay, well, let's go past claim language. So there is a presumption, rebuttal presumption, that this limitation is not claimed in the means plus function format. And Caterpillar failed to provide sufficient evidence to overcome this presumption. Now, if we pass claim language, I refer the Court to page 1088-1089 of the appendix, which refers to the discussion of the provisions in the specification and how one of ordinary skill in the art will view this specification. Based on this discussion and based on this specification, the term control denotes a well-defined class of structures. And that's an understanding of one of ordinary skill in the art. And that's the inquiry that the ALGA had to perform. So based on this discussion and based on the specification and provisions addressed in this discussion, including the functions that the controller has to perform, there is substantial evidence in the form of Dr. Lunke's testimony and Dr. Vilinsky's declaration that supports the ALGA's finding that this term is not functionally claimed and controller refers to a standard controller, such as a programmable logic controller. Well, how is this case different from MDT? Well, the case is different because in MDT, there was no finding that one of ordinary skill in the art will understand the term in question. In that case, it was mechanical control assembly that determined in question connotes a well-known class of structures. So that's a major difference, and the result is different. Now, in this case, as I said, both the claim language and specification show that one of ordinary skill in the art will understand this term to be well-defined structurally. In addition, I want to say that it was Caterpillar's burden to overcome the presumption by preponderance of the evidence. In other words, Caterpillar had to show that one of ordinary skill in the art would not understand this term to mean a well-known class of structures, and Caterpillar failed to do that, and that's a determinative point based on this court's precedent. For example, I can refer to Epic's decision, which was favorably cited and quoted in the recent MTD decision. After that, the judge's finding essentially resolves affirmatively the essential inquiry under Williamson, and that essentially ends the first step of the analysis by finding that this term is not a functional claim. Therefore, the analysis doesn't proceed to the second step. Caterpillar conflates the steps and is looking for something that shouldn't be looked for in this situation. Based on that, the intrinsic evidence entirely supports the ALJ decision and extrinsic as well. In this case, the judge's property relied on the extrinsic evidence in the form of the expert's testimony because this testimony, this extrinsic evidence, is consistent with the intrinsic evidence, and it serves to explain understanding of one of ordinary skill in the art, which is perfectly acceptable and appropriate under the established rules of claim construction. Now I want to address the obviousness issues. The reason why the commission found that Caterpillar failed to prove by claim-convincing evidence that the asserted claims of 530 patents are not rendered obvious by RX 500 and Darius has nothing to do with the claim construction of the term controller. The reason for that was substantial evidence in the form of Dr. Lucas' testimony. Dr. Lucas testified that... And by the way, going back to... I'm sorry, I just wanted to mention one more thing. ...that the term controller was construed not in isolation. It was construed in light of the functions that it was supposed to perform under the claims of the patent. So there is no argument that it was improperly construed. Now, back to the RX 500 and Darius. So Dr. Lucas opined that the proposed modification would entail substantial redesign, that it would require a significant change to the control scheme, and it's not a trivial modification. Essentially, it will alter the principle operation of Darius' external reference system. And that's the reason why the judge relied on this substantial evidence and made this factual finding, which should not be disturbed. Mr. Lieberman, this is Judge Toronto. I think Mr. Barney says, at least as to part of what you just said, that it was simply legally erroneous to focus on changing the principle of operation of Davis. Right. I understand this point, and I'm going to address it. The judge, at least, was not aware of any decision that would specifically say that this principle applies only to one of the references considered in the combination. And the judge actually cited two decisions in the ratty and left-back industries in his I.D. And these decisions indicate that that principle actually applies to any reference, even to the second reference in the combination. And I will, for example, read – I will quote left-back industries' decision. No, can you not quote decisions from different contexts? Tell me why, at the proper level of generality of the principle that Davis teaches, a skilled artisan would not take that principle to make a modification of the RX-500. Because we have to look into these references through the eyes of one of ordinary skilled artists. And my understanding is that, based on the testimony of Dr. Lunkes, when one of ordinary skilled artists will see that this modification would alter the principle, one of ordinary skilled artists would not reasonably consider this reference as a proper reference for the combination. Because in his mind, in his view, it will be an entirely different animal as compared to how it's going to be used in the combination. Not used, but the principle of operation. It will be entirely different. Again, we have to look into that. A layperson can view this differently. But one of ordinary skilled artists will view it in this way. One who is actually working in this art. And Dr. Lunkes testified that, in the view of one of ordinary skilled artists, the fact that it will alter the principle of operation of Davis's external reference system, that will preclude this combination from the standpoint of one of ordinary skilled artists. And that's substantial evidence that the ALJ properly relied on. Okay. Now I just wanted to briefly respond to Heather Peeler's argument in the reply brief. Okay. I hear the signal. That's probably a yellow signal. So, just wanted to say one thing. Are you saving any time for your co-counsel or the ITC? Well, we don't have any rebuttals yet. So, I just wanted to mention that substantial evidence supports the ALJ's finding with respect to the combination of Swisher and Dumar both under the express teaching and teaching by inherency. And that's Dr. Lunkes' testimony response 342 to 346 at pages 1488-89. That's the thing that I wanted to say with respect to that combination. And thank you very much. I'm not sure how much time is left. Your Honor, this is Patrick. He went on for about 11 minutes. So, technically, zero. But if you would like, I can give the intervener five minutes. Okay. Let's do that. And then we'll give some more to the other side for rebuttal. Yes, Your Honor. Hi. Thank you. And may it please the Court, this is Michael Joffrey for Birkin. I'd like to start off with Judge Toronto's question about why it is the case that a person of skill and merit would not combine the RX-500 and David's. And I want to point out that first off that this is a slightly different argument than what Caterpillar attributes to Birkin. Caterpillar essentially says that one could not, or bodily incorporate, one could not incorporate the controller of Davis into the RX-500. And that's not Birkin's point. Birkin's point is that a person of skill and merit would not. There's no reason that a person would take the Davis controller and incorporate it into the RX-500. And the reason is fairly simple. Davis has a controller that is used for grade and slope controlling. And that is a different function than what is being claimed in the 530 patent. But Caterpillar's obviousness combination would essentially take this Davis grade and slope controller and then add it to the RX-500, which already has a grade and slope controller, but then modify the Davis controller in that combination to work with a different mechanism that does not control grade or slope, and to arrive at the different still intelligently controlled mechanism that's actually claimed in the 530 patent. So there's just too many multiple steps such that the ALJ properly found that it would disrupt the operation of the Davis, and a person of skill and merit just simply would not make the combination that Caterpillar proposes. And that's supported by substantial evidence. Mr. Jaffray, what do you think is the proper role, if any, of this reference to changing the operation of the Davis device principle component, as opposed to, if you're starting with the RX-500, you may have given some reasons why the ALJ could properly find that there's just too many steps and too many uncertainties, and that would be fine. But what does that have to do with changing the principle of operation of Davis? The reason, Your Honor, is the following. It's that both Davis and the RX-500 contain what's known as a grade and slope controller. And all the parties admit that the grade and slope controllers cannot perform the same functions that are claimed in the 530 patent. So it doesn't matter whether or not you change the operation of the Davis grade and slope controller, or change the operation of the grade and slope controller that's already found in the RX-500. They're both a controller that does something quite different than what is found in the claims of the patent. And so, therefore, regardless of whether you modify one or the other, those modifications simply would not make sense. There would be no reason to take this Davis controller and modify it however it needed to be modified to meet the claims of the 530 patent. Would you mind just completely switching gears before your clock runs out back to 1.12? At the level of not the particular requirements of our Williamson and Nautilus and how 1.12.2 is different from 1.12.6, can you respond at the level of explaining why it makes sense to keep those inquiries quite separate so that one doesn't look for these purposes at step one of 1.12.6, and whether the structure is one that has enough definition to perform the function? I think, Your Honor, that the problem with Caterpillar's argument is that they flip what the statute requires. The question is, if we claim or to claim functionally, the question then is, well, is there sufficient structure that's found within the classification? But that presumes the conclusion that this was functionally claimed. That's contrary to what the ALJ found. And so to ask, well, do you have enough in your claim such that you're indefinite or not, basically assumes that there was a functional claiming. But that's not allowable. That's not the way that the claim is written, and that's not what the ALJ found or the experts stated. One way to think of this is thinking of an electric drill. An electric drill obviously takes its name from its function. Furthermore, you can modify the drill by swapping out different bits, and therefore you could use the drill on different things. Similarly, but that doesn't mean that the drill now somehow loses its structure or that we have trouble understanding it in terms of an indefiniteness inquiry under 1.12.2. And so similarly here, the controller is the controller. It obviously can be modified, but that does not strip it of its structure. I believe my time is up. Okay. Thank you, counsel. Let's go back to Mr. Barney. Thank you, Your Honor. I'll go ahead and just start with the very last point that my colleague made with the example of the electric drill. The problem is, and the reason that you have to look at the function, is you can have a claim that says an electric drill configured to make a peanut butter and jelly sandwich. According to the work and the Commission's logic, all they have to prove is that an electric drill is a known class of structures, and that's the end of the inquiry. Mr. Lieberman calls that the essential inquiry. It's not the essential inquiry. It's only half of the essential inquiry. The rest of the inquiry is, is that sufficient structure to actually perform the claimed function? And you mentioned MTD products, which is certainly on point. I would also point, Your Honors, to a more recent case, and we did cite this to our colleagues yesterday, so they were aware of it, eGenera versus Cisco. This is a presidential decision from August 28, 2020. And I would commend the panel to review that case as well. Very similar to MTD products, where the claim recited a particular, you know, particular limitation. It was a control limitation that included logic to modify messages. And what the court held was, even if we assume that logic has some sort of structural connotation to it, in the sense that it denotes software, firmware, circuitry, or some combination thereof, that's still not enough because it's not structure that performs the claimed function. And that is the error here. That's the problem here. Now, going back to the obviousness inquiry, my colleague from Workin says that the problem is, we're trying to put a grade and slope controller into the RX500 that already has a grade and slope controller. That, again, is an absolute mischaracterization of what we argued. We never argued that you would take the entire grade and slope system from Davis and drop it into the RX500. That would be illogical because the RX500 already had a grade and slope control system. The teaching that we took from Davis was just that. It was a teaching. It was a teaching of a specific type of controller called a deviation elimination controller, which allows the user to preset a value, and then it has linear sensor measurements, and it compares those linear sensor measurements with that preset value and moves the legs to eliminate any deltas between those values. That's the only teaching that is being taken from Davis. It has absolutely nothing to do with grade and slope control. That was a straw man that Workin brought into the case. That was not Caterpillar's argument. That is, again, the violation of the bodily incorporation doctrine. Again, you have to remember that Workin successfully argued in order to stave off the indefiniteness argument that a person of ordinary skill in the art would already know how to choose a controller and how to program it specifically using leg sensor data to accomplish the function, the very function that the RX500 and Davis teach. The RX500 already had a manual process for taking leg sensor data, showing it on a console, and allowing the user to manually adjust the legs using toggle switches to reach desired set points. The only thing we're modifying in the RX500 is we're automating that process. Unless your honors have specific questions, that's all I have. Okay, thank you, counsel. The case will be submitted.